DtjReee, Judge,
delivered the opinion of the court: *
This is a civilian pay case in which plaintiff is suing to recover salary he would have received but for the fact that he was arbitrarily discharged from his position as Mail Clerk at the U.S. Navy Finance Center, Washington, D.C. The determinative issue in this court is whether the decision of the Civil Service Commission, in affirming that discharge, was arbitrary and capricious. We hold that CSC’s action was arbitrary and consequently plaintiff is entitled to recover.
The facts of the case are as follows: Joseph Hemby, a veteran’s preference eligible, was employed as Mail Clerk at *143 tbe U.S. Navy Finance Center in Washington, D.C. A letter of complaint dated July 23, 1965, was received by tbe Navy Finance Center where Mr. Hemby worked, from Union Clothiers, Inc., Washington, D.C., advising that plaintiff and his wife owed them (Union Clothiers) $41.00 on a bill which had been reduced to judgment in the Small Claims Branch of D.C. Court of General Sessions on January 15, 1965. The letter requested the official aid of the Navy to obtain satisfaction from Mr. Hemby and requested also that the Navy interview plaintiff to determine a plan of repayment.
Union Clothiers wrote this letter, knowing that the Navy Finance Center, like most Government Agency employers, would exert additional pressures on the debtor. For example, in the instant case, the Navy Finance Center had issued general Instructions April 7, 1965 which provided in pertinent part [NFC Instruction 12750.4A] :
It is the policy of the Department of the Navy and this activity that employees are expected to pay their just debts and maintain a reputation in the community for honoring their obligations. Failure of an employee to abide by this policy and to honor his just debts without good cause may reflect on his suitability for continued Naval employment to such extent that disciplinary action, including removal, may be necessary.
It was for the obvious purpose of exerting this additional pressure against the debtor that Union Clothiers advised the Navy Finance Center of the Hembys’ indebtedness. As per expressed policy of the Navy, Mr. Hemby was called into the office of Mr. George W. Compton, Associate Director of the Finance Center, to answer inquiries about this debt. Mr. Hemby denied having any knowledge of the debt or the judgment. After a check of the court records indicated that Mr. Hemby had been served personally and then confessed judgment on January 15, 1965 in the Small Claims Branch of the D.C. Court of General Sessions, plaintiff was called in for a second interrogation on July 26,1965. Again he stated that he knew nothing about the indebtedness, or about the judgment; nor had he ever been served personally, and had never appeared in court concerning this matter.
*144 On August 4, 1965, the Commanding Officer of the Navy Finance Center sent plaintiff a letter informing him that his removal had been proposed, based upon the following reasons: “Charge No. 1 — False Statements to Senior Official of N.F.C., Washington hi Connection with Inquiry on your Just Indebtedness” and “Charge No. 2 — Failure to Honor your Just Debts without Good Cause”. By the terms of this notice plaintiff was given an opportunity to reply to the charges personally, and to request a hearing. Plaintiff, through his attorney, requested a hearing.
The hearing was held August 25,1965. As per Navy Civilian Personnel Instructions [NCPI750 §§ 5,6 (m) ], a Hearing Advisory Committee made and reported its findings regarding the charges. It found as follows: “[D]ue to lack of conclusive evidence to substantiate the charges, it is the majority opinion that findings are insufficient to support the charges”.
Nevertheless, on September 21,1965, 'the Commanding Officer of the Navy Finance Center rejected the conclusion of his Advisory Committee and stated in his letter of final decision that he found the charges were fully supported by the evidence, and warranted plaintiff’s removal. Plaintiff’s separation was effected on September 23,1965.
On September 29, 1965, plaintiff appealed to the Comptroller, U.S. Navy, seeking reversal of the decision to remove him. On November 5, 1965, the Comptroller sustained the removal action.
On November 23,1965, plaintiff appealed to the Civil Service Commission’s Appeals Examining Office which conducted a hearing. The Navy Department was not represented at the hearing, but relied entirely on the record developed a't the earlier proceeding before the Advisory Committee.
The evidence on which the Navy relied in determining that plaintiff had lied with regard to his knowledge of this debt, and on which CSC relied in sustaining plaintiff’s discharge, is a certified return of service by Deputy U.S. Marshal Donald Smith with the notation that Mr. Hemby had been served personally on January 6,1965, and also the official record in the Small Claims Branch of the D.C. Court of General Sessions that Mr. Plemby confessed judgment to Union Clothiers, Inc. on January 15, 1965.
*145 Plaintiff’s evidence that he was not aware of any indebtedness to Union Clothiers is based only partly on his own sworn testimony to that effect. Mr. Hemby testified that he had never been served personally, but had been ont driving his taxi that evening, and that he never appeared in court to confess judgment. He testified further that he did not become aware of the debt which his wife had incurred until after he questioned her about it after the second interrogation at work on July 26, 1965; by that time it was too late. It is of interest to note that one of the conclusions in the majority report of the Navy Advisory Committee refers to Mr. Hemby’s demeanor upon testifying: “Further, under cross-examination of the defendant, Mr. Hemby was firm and straight-forward in his answers to questions put to him regarding the indebtedness”.
Plaintiff also relies on the sworn testimony of Mildred Hemby, his wife. Mrs. Hemby presented written testimony to the agency to the effect that process was served on her personally by the Deputy U.S. Marshal at the Hemby home on the evening of January 6,1965; that Mr. Hemby was not at home on the evening of January 6, 1965, but out driving his taxicab; that she had concealed the debt to Union Clothiers, and likewise concealed the court action for fear of angering her husband; that she worked from 4:30 A.M. to 8 A.M. as a cleaning lady at the Criminal Division of the Court of General Sessions, and after work on January 15, 1965, she went to the Small Claims Court to confess judgment; and that only when her husband questioned her on July 26, 1965, did she reveal to him her dealings with Union Clothiers. In addition, at the Civil Service Commission hearing, she testified that her paydays were on alternate Fridays, and her husband’s paydays were on the Fridays in between; she further testified that she made the $5.00 payments to Union Clothiers on February 12, March 26, May 8 and July 30, 1965 pursuant to the court order of January 15, 1965. These payments corresponded with her own paydays, but not that of her husband’s.
It was also introduced into the record that the fact that of seven instalment sales contracts between the Hembys and Union Clothiers, every one but one was signed by Mildred *146 Hemby. The one contract signed by Mr. Hemby was dated January 17,1962 — almost three years before the events leading to the judgment of which Mr. Hemby has denied any knowledge.
Finally, to corroborate plaintiff’s testimony that he was out driving his taxi on the evening he was allegedly served personally at home, plaintiff introduced as evidence his “hacker’s” manifest for January 6, 1965, which indicated he was operating his taxi that evening, and could not have been at home. The manifest showed that Mr. Hemby was at 18th and Kalorama Eoad, N.W. at the time he was supposedly served a summons at his home in Southeast Washington. It was noted in the record that the keeping of a manifest was required by the Globe Cab Company, the taxi company with which plaintiff was affiliated. It was noted also that a taxi driver is subject to a fine if he does not enter the appropriate information on his manifest immediately upon discharging a passenger and before picking up a new passenger. No attempt was made at either hearing to prove that the manifest had been forged or altered after the fact. The Agency merely noted that the manifest was always in the possession of plaintiff, and not required to be turned in on a regular basis.
It is on the basis of this record presented to the Civil Service Commission that we must determine whether the Commission was arbitrary and capricious in concluding [C.S.C. Decision at 6] :
In summary the record shows that the appellant was not at work at the U.S. Navy Finance Center on January 15,1965, that a Deputy tJ.S. Marshal served Hemby with a summons to appear in Court on January 15,1965, there is a certification that both Joseph Hemby and Mildred Hemby were in Court on January 15,1965 and that both parties confessed to the Judgment.

In the absence of any evidence to the contrary excbud-ing the self-serving statement of the appellant and his wife we must respect the integrity of the Court.

Therefore we find Charges 1 and 2 sustained. [Emphasis supplied] [1]
*147 Since plaintiff is a veteran, he is entitled not only to obtain a review by the Civil Service Commission of all questions involved in his dismissal (Section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 390, 5 U.S.C. 863) but he is also entitled to have this review be fair and rational. The decision cannot be arbitrary or capricious. See, Liotta v. United States, 174 Ct. Cl. 91, 96 (1966); Blackmon v. United States, 128 Ct. Cl. 288, 291, 120 F. Supp. 774, 776 (1954).
We do not think this standard has been met in this case. The Civil Service Commission’s decision is arbitrary and capricious in that it concluded: “In the absence of any evidence to the contrary excluding the self-serving statement of the appellant and his wife, we must respect the integrity of the Court [Small Claims Court]”. This statement, in addition to a study of the whole CSC decision indicates to us that the Civil Service Commission acted arbitrarily in two ways. First, the Commission assumed that self-serving testimony is never sufficient to impeach facts established by court records, and consequently did not even bother to consider the Hembys’ testimony; and second, the Commission assumed that the hacker’s manifest, filled out by plaintiff prior to the beginning of this controversy, is also a self-serving statement, and consequently failed to consider this piece of evidence.
In the first instance, it was completely arbitrary for the Commission to exclude from consideration the sworn testimony of Joseph and Mildred Hemby merely because records of the court are involved, since Mr. Hemby was not attempting to attack the effects of the judgment against him. The charactei'ization of “self-serving” does not add any reason to exclude this highly relevant evidence. The question involved in the dispute, i.e., whether Mr. Hemby had personal knowledge of a debt, is of a peculiarly personal nature. Although extrinsic facts can be presented which show probabilities of plaintiff’s knowledge, the very best way to ascertain what Mr. Hemby knew was for him to testify personally. It was arbitrary and grossly unfair to reject this evidence out of hand, and not even consider it merely because it was “self-serving”. It had to be considered and weighed. The fact that *148 the evidence was self-serving can only go to the probative weight of the testimony.
The best way to test the probative value of such testimony is by means of careful and probing cross-examination. In this case, Mr. Hemby was subject to cross-examination before the NFC Advisory Hearing Committee. As mentioned above, the Committee found that “under cross-examination of the defendant, Mr. Hemby was firm and straight-forward in his answers to questions put to him regarding the indebtedness”. The Committee decided in favor of Mr. Hemby, and concluded that there was a “lack of conclusive evidence to substantiate the charges” against plaintiff. On the other hand, Mr. Hemby was not subject to cross-examination before the Civil Service Commission. Yet, nowhere in the CSC opinion is there an analysis of his testimony. The Commission apparently thought that the testimony was eliminated from consideration merely because it was self-serving. This was arbitrary and capricious on the part of the Commission.
At this point it should be noted that the exact procedure used by the Commission in dealing with plaintiff’s testimony is not quite clear. On the one hand, it is possible that the Commission actually “excluded” the Hembys’ testimony, as contended by plaintiff’s attorney. While, on the other hand, the more likely possibility is that the Commission was saying, that aside from, the self-serving testimony of Mr. and Mrs. Hemby, there is no evidence to the contrary. But even if this is the case, the complete failure to consider and analyze this testimony, and instead, adopt the expedient of labeling it as self-serving, indicates to us that the Commission rejected this testimony out of hand without giving it any consideration whatsoever. We are not saying that the Commission necessarily had to believe Mr. and Mrs Hemby’s testimony, but it had at least to consider it. The Commission’s failure to do so renders its decision arbitrary and capricious.
The mere fact that the Government submitted court records as evidence of facts contained therein does not raise a *149 conclusive presumption of validity of those facts.[2] The evidence submitted by plaintiff, whether self-serving or otherwise, had to be at least considered. The quantum of proof necessary to impeach facts established by a court record may be greater, but such facts are not conclusively presumed correct. The principle of respecting the integrity of a court is not so inflexible as to categorically preclude any consideration of evidence which may indicate error of a court record. The Court of Appeals for the District of Columbia in a recent case (Holmes v. United States, 370 F. 2d 209 (1966)) held that the defendant was entitled to a hearing for a chance to prove that a statement contained in an official record of the D.C. Court of General Sessions was erroneous. Although Holmes, supra, was a criminal case, that fact too only goes to the quantum of evidence needed to overturn the presumptive correctness of a court record. The case-does, however, stand for the proposition that the records of the D.C. Court of General Sessions are not conclusively presumed correct. See also, Newman v. Universal Enterprises, 129 A.2d 696 (Mun. Ct. App. for D.C., 1957). In this regard, it was obligatory for the Civil Service Commission to consider all of the evidence of record in determining whether plaintiff had knowledge of the debt. A reading of the CSC decision indicates that they did not consider all of the evidence. It was arbitrary for the Civil Service Commission to eliminate the statements of Mr. and Mrs. Hemby from consideration merely because court records were involved.
Secondly, it was also arbitrary for the Commission to conclude that there was “an absence of any evidence to the contrary excluding the self-serving statement of the appellant an'd his wife”. Even assuming arguendo that the testimony of Mr. and Mrs. Hemby can be excluded as self-serving, there was other evidence which tended to corroborate plaintiff’s version of the story. A line must be drawn between plaintiff’s testimony which was made in preparation for or during the course of adversary proceedings, and a document *150 which plaintiff filled out before the beginning of litigation, i.e., his hacker’s manifest. The manifest was filled out before plaintiff knew he would be questioned as to his activities that evening, and so had no motive to falsify the manifest at the time it was filled out. In view of the fact that no one tried to prove that the manifest had been altered afterwards, it certainly must constitute “some evidence” to the contrary of the ultimate findings of the Navy Finance Center. Yet, the Civil Service Commission completely ignored this very important piece of evidence without stating any reasons whatsoever. The Commission merely stated in its conclusion, quite arbitrarily, that there is no evidence to the contrary.
In summary, the Civil Service Commission decided that the validity of facts contained in court records cannot be challenged by self-serving testimony of the interested parties alone. In this regard, the Commission was arbitrary and capricious, since plaintiff was entitled to have his testimony at the very least considered by the Commission. Consequently, plaintiff’s rights under Section 14 of the Veterans’ Preference Act, supra, were violated, and his discharge is illegal. Cf., Hanifan v. United States, 173 Ct. Cl. 1053, 354 F. 2d 358 (1965).
Plaintiff is therefore entitled to recover on his claim, and judgment is entered to that effect, with the determination of amount of recovery to be reserved for further proceedings under Eule 47 (c).
BINDINGS 0E FACT
The court having considered the evidence, the report of Trial Commissioner Donald E. Lane, and the briefs and argument of counsel, makes findings of fact as follows:
1. From July 21,1963, until September 23, 1965, plaintiff, a veterans’ preference eligible, was employed as a Mail Clerk (PD 2437.2-1) at the U.S. Navy Finance Center in Washington, D.C., at grade GS-3.
2. On June 24,1964, plaintiff’s supervisor gave plaintiff a letter of reprimand for his unauthorized absences on the previous June 15th and June 22d.
*151 On January 22,1965, the Comptroller of the Navy canceled a 10-day suspension which had been imposed on plaintiff earlier in the month, for an alleged false statement to his department director concerning payment of a debt.
In late February 1965, plaintiff was given a 3-day suspension from duty for his unauthorized absence on December 8, 1964.
On March 5,1965, plaintiff was given a letter of reprimand for failure to honor a just debt (based on complaints from Loans, Inc.).
On July 1, 1965, plaintiff was given a 1-day suspension from duty for continued failure to honor the debt to Loans, Inc. He unsuccessfully appealed this suspension.
3. On August 4,1965, the Commanding Officer of the Navy Finance Center sent plaintiff a letter reading in pertinent part as follows and informing him that his removal had been proposed:
1. In accordance with the regulations set forth in reference (a), this office proposes to remove you from your position as Mail Clerk * * * for making false statements, and failure to honor your just debts without good cause. Specifically, this proposed action is based upon the following reasons:
Charge No. 1 — ealse statemeNts to senior ofeigial oe NEO WASHINGTON IN CONNECTION WITH INQUIRT ON
TOUR INDEBTEDNESS
A letter of complaint dated 23 July 1965 was received from Union Clothiers, Inc., Washington, D.C., concerning an indebtedness of $41.00 owed by you and indicated no payment had been made since 8 May 1965. The letter referred to Judgment No. C 26432-64 obtained against you. On 26 July 1965 Mr. George W. Compton, Associate Director, U.S. Navy Finance Center, showed you this letter in the presence of Miss Mary E. Lipp, Personnel Management Specialist, and asked you if it was a legitimate debt. You stated that you did not know anything about it and had no knowledge of the judgment. On 26 July 1965, Mr. Compton telephoned the Civil Court, 4th and E Streets, N.W., and was told that a summons to appear in court was served to you by Donald M. Smith, Deputy Marshal, and that you appeared in court in January 1965.
*152 In a second interview witb yon on 26 July 1965, the information obtained from the Civil Court was related to you by Mr. Compton in the presence of Mr. Frederic Gr. Miller, Director, Planning and Comptroller Department, and Miss Lipp. You again stated that you knew nothing about the indebtedness. You denied that you had any knowledge of the judgment and you denied that you had been in court concerning this matter. A representative of this office personally reviewed the case record on 27 July 1965 and verified the fact that a summons to appear in court was served to you personally on 6 Janu-uary 1965 by Donald M. Smith, Deputy Marshal, and that you and your wife appeared in court on 15 January 1965 and confessed to owing the indebtedness, and that Judgment C 26432-64 was filed against Joseph and Mildred Hemby, 4507 B Street, S.E. The record further reveals that you agreed to pay $5.00 each month on the indebtedness beginning 29 January 1965. Your name, your wife’s name and your address as stated above are the same as those on record in this office. In the face of the above evidence, it is considered that your statements constitute making false statements to Mr. Compton.
Item 28 of reference (b) provides a minimum penalty of reprimand and a maximum penalty of removal for the first infraction of falsification.
Charge No. 2 — failure to honor tohr just debts WITHOUT GOOD CAUSE
As referred to in Charge No. 1 above, a letter of complaint dated 23 July 1965 was received from Union Clothiers, Inc., Washington, D.C., concerning an indebtedness of $41.00 owed by you and indicated no payment had been made since 8 May 1965. The letter referred to Judgment No. C 26432-64 obtained against you. This is the third infraction of this offense within a reckoning period of one year, as established by Enclosure (2).
Eeference (c), paragraph 6, implements the provisions of reference (b), establishing a minimum penalty of reprimand and a maximum penalty of removal for the third infraction of failure to honor just debts without good cause.
2. Your past record has been taken into consideration in proposing this removal action. The following disciplinary actions are a matter of official record:
*153 The letter then cited the official sanctions listed in finding 2, except that it omitted the canceled suspension of January-1965.
4. “Reference (c)” mentioned in the letter of August 4, 1965, is NFC [Navy Finance Center] Instruction 12750.4A of 7 April 1965, a statement of policy and procedures with respect to indebtedness of civilian personnel. It provides in pertinent part:
2. Policy. It is the policy of the Department of the Navy and this activity that employees are expected to pay their just debts and maintain a reputation in the community for honoring their obligations. Failure of an employee to abide by this policy and to honor his just debts without good cause may reflect on his suitability for continued Naval employment to such extent that disciplinary action, including removal, may be necessary.
3, Information.
a. This activity is not a debt collecting agency. Creditors are responsible for investigating employees to whom they extend credit and for making their own collections; however, employees are personally responsible for prompt payment of their just debts. Failure to satisfy or make suitable arrangements for settlement is considered detrimental to the best interest of the Navy and will not be tolerated in this activity.
b. Disciplinary action against an employee will not be taken merely on the grounds of indebtedness, but may be initiated when an employee’s failure to honor just debts without good cause necessitates excessive work on the part of supervisors and Industrial Relations Department personnel in answering correspondence or phone calls related to the indebtedness and where such indebtedness reflects adversely on this activity and the employee’s general suitability.
c. The suspension penalty will normally not be used in indebtedness cases, since it deprives this activity of the services of the disciplined employee while simultaneously depriving the employee temporarily of the financial means of paying his debts.
# % ifc ij: $
6. Disciplinary Actions. In instances where disciplinary actions are necessary, a letter of reprimand may ¡be used when it appears capable of correcting the employee. In more extreme cases a suspension may be imposed. Removal shall be considered only in the more chronic and flagrant cases where the employee fails to respond *154 to other corrective endeavors. Charges, penalties and reckoning period are noted as follows:
a. Charge: Failure to honor just debts without good cause.
b. Penalty:

Offense Minimum Maximum

1st Reprimand 1 day suspension
2nd Reprimand 5 day suspension
3rd Reprimand Removal
c.Reckoning period: One (1) year.
5. By the terms of the August 4,1965, notice, plaintiff was given an opportunity to reply to the charges personally and in writing, to submit affidavits in his support, and to request a hearing. Plaintiff, through his attorney, requested a hearing.
6. Plaintiff’s request was granted and the agency hearing was originally set for August 19,1965. However, the Deputy Marshal who allegedly served the summons mentioned in the notice of proposed removal was on vacation until Monday, the twenty-third. Accordingly, at plaintiff’s request, the hearing was rescheduled for August 25, 1965, when it was held. At the time of the hearing, plaintiff still had not been able to contact the Deputy Marshal, but he raised no objection to the hearing being held at that time. The Hearing Advisory Committee consisted of Lt. Howard F. Gohrband, Jr., chairman, and Joseph R. Burke and Hoyt C. Scott, members. Plaintiff was represented by attorney throughout the hearing. The hearing was held pursuant to NCPI [Navy Civilian Personnel Instructions] 150, which states in sections 5 and 6(a) that the hearing provided to an employee is an administrative proceeding conducted solely for the purpose of obtaining facts to facilitate the making of an equitable decision. NCPI 150, sections 5 and 6(m), provides that when the hearing has been completed, the Hearing Advisory Committee shall submit a written report to the official who will make the decision on the proposed disciplinary action. At the hearing, evidence was presented by both the plaintiff and the agency. Plaintiff testified in his own behalf and introduced a sworn statement from his wife.
7. On September 10,1965, the Hearing Advisory Committee released its report containing its findings. The majority *155 held that there was a lack of conclusive evidence to substantiate the charges, and recommended that “removal action be withheld pending the feasibility of reopening of the hearing may be obtained.” Lt. Gohrband, who filed a minority report, was of the opinion that the charges against plaintiff should be sustained.
8. On September 21, 1965, the Commanding Officer of the Navy Finance Center stated in his letter of final decision that he found that the charges were fully supported by the evidence and warranted plaintiff’s removal. Plaintiff’s separation was effected on September 23, 1965.
9. On September 29, 1965, plaintiff appealed to the Comptroller, U.S. Navy, seeking reversal of the decision to remove him. On November 5, 1965, the Comptroller sustained the removal action and advised plaintiff by letter that the decision could be appealed either to the Office of the Secretary of the Navy or directly to the Chief of the Appeals Examining Office, U.S. Civil Service Commission.
10. On November 23., 19,65, plaintiff appealed to the Civil Service Commission’s Appeals Examining Office and requested a hearing. The hearing was held on December 16, 1965; the agency declined participation. Plaintiff presented testimony from Mr. Stilley, who was employed in the office of plaintiff’s attorney, from plaintiff’s wife, and from himself. On January 12, 1966, the Appeals Examining Office sustained the agency action and upheld plaintiff’s dismissal and concluded, inter alia:
In the absence of any evidence to the contrary excluding the self-serving statement of the appellant and his wife, we must respect the integrity of the court.
11. On January 17, 1966, plaintiff appealed to the Board of Appeals and Keview, U.S. Civil Service Commission, which sustained his dismissal in a decision dated June 17, 1966.
12. On July 19,1966, the plaintiff requested the Civil Service Commissioners to reopen the case. The Commissioners sustained the Board of Appeals and Eeview on August 23,1966. Plaintiff appealed to the Commissioners again on August 29, 1966, and they again sustained the previous rulings, in a letter dated September 14, 1966.
*156 13. At the hearing before the agency Hearing Advisory Committee the agency presented copies of the following court papers as evidence that Joseph H. Hemby knew of the debt:
(a) The sworn statement of claim filed in the Small Claims and Conciliation Branch of the District of Columbia, Court of General Sessions on December 31, 1964, and reading in pertinent part as follows:
Uasriour ClothieRs, Inc., 415 7th Steeet Nokth West, Washington, D.C., plaintiee

v.

(1) MiiiDRED Hemby, (2) Joseph Hemby, dependant
No. C 26432-64
STATEMENT oe claim
Balance due and owing in the amount of $53.00 for merchandise sold and delivered, besides costs and interest at the rate of 6% per annum from 9/11/64.
(b) The entry of the Deputy U.S. Marshal on the reverse side of the summons, the entry reading as follows:
Stamped:
Received
Jan. 2,10:44 AM ’65,
United States Marshal,
Washington 1, D.C.
Served copies of the complaint and this summons, on Joseph Hemby, Personally.
Date Jan. 6,1965.
Luke C. Moobe,

U.S. Marshal.

(S) Donald M. Smith,

Deputy.

Served the within named Mildred Hemby under Rule 4 by leaving copies thereof at her usual place of abode with Mr. Joseph Hemby (husband) at 4507 B St., S.E., #102.
Date J an. 6,1965.
Luke C. Moore,

U.S. Marshal.

(S) Donald M. Smith,

Deputy.

(c) A Certificate of the Clerk, Small Claims and Conciliation Branch, D. C. Court of General Sessions, reading as follows:
*157 UNION CLOTHIERS, InO.

V.

Mildred Hemby and Joseph Hemby
No. C 26432-64
Certutcate
I hereby certify that the above named defendant (Joseph Hemby) was served on January 6, 1965,. personally by Deputy Marshal Donald Smith with notice to appear in court on January 15, 1965 and that the above named defendant (Mildred Hemby) was served under Rule 4 by leaving a copy of said notice with her husband (Joseph Hemby) on January 6,1965 to appear in Court on January 15,1965.
Both defendants appeared according to record on January 15, 1965 and Confessed to owing the amount sued for ($53.00) — further, agreed to pay said judgment at the rate of $5.00 per month beginning 1/29/65.
However, defendants defaulted in said payments, therefore, the allowance for installment payments was removed at the request of plaintiff on May 7, 1965 per notice mailed to all parties.
Witness, my hand and seal of said court this day of , 19 .
Charles P. Henry, Jr.,
Ohief Deputy Olerh,

Small Claims and Conciliation Branch.

By (Signature illegible),

Assistant.

(d) The outside of the jacket containing the papers on case No. C 26432-64 bears the following:
Jan. 15,1965
(1) Judgment By Confession
(2) Judgment By Confession
Execution Stayed Conditioned Upon Payment of $5 every mo beginning 1-29-65
Judge Hyde (initials).
April 2,1965
Plaintiff’s Motion to set aside Stay of Execution withdrawn.
Judge Howard.
May 7,1965
Plaintiff’s Motion to set aside Stay of Execution granted.
JudgeKronheim (initials).
*158 14. At the subsequent bearing before an Appeals Examiner, U.S. Civil Seivice Commission, an assistant to plaintiff’s attorney testified that his investigation of Union Clothiers’ records disclosed seven documents that appeared to be installment contracts with the Hembys. Only one of these dated January 17, 1962, in an amount of $58.94, was signed by Joseph Hemby; the other six, ranging from December 22, 1961, to January 3, 1964, were signed by Mildred Hemby.
15. The records of Union Clothiers, submitted by the agency at the agency hearing and before the Civil Service Commission at the Civil Service hearing, indicate that the “Account of Mildred and Joseph H. Hemby” was reopened on November 16, 1963, with a charge of $150.15, a payment of $1.15, and a consequent balance due of $149.00. From that date until the time when the agency first questioned plaintiff on this matter, the account shows a continuous indebtedness to Union Clothiers. None of the installment purchase contracts charged to the “Account of Mildred and Joseph H. Hemby” including and thereafter the opening of the account on November 16, 1963, were signed by Joseph Hemby.
16. The testimony given by Mildred Hemby at the Civil Service Commission hearing was substantially the same as her written testimony presented at the agency hearing. Her written testimony concerning the debt included the following:
3. Because of my husband’s worrying about unpaid bills, I told him in 1963 that I had paid all we owed to Union Clothiers, Inc., although this was not true, and I did not discuss any indebtedness to Union with him from then until July 26, 1965, when he asked me about it.
4. In July or August, 1964, we owed Union approximately $60.00. At that time I bought chair covers there valued at approximately $40.00, increasing the total indebtedness to approximately $100.00.1 then paid a few dollars at a time until the indebtedness was reduced to $53.00 in September, 1964. Because of other bills due to the birth of my youngest child in October, 1964,1 then paid no more to Union.
17. Union Clothiers, Inc.’s own records of the Mildred and Joseph H. Hemby account do not agree in all details with *159 Mrs. Hemby’s statement. They show that after the $150.15 purchase in November 1963, mentioned above, there was only one more credit purchase, in the amount of $16.47, on January 3,1964. After that the records show the Hembys to have made payments toward their balance in January, February, April, May, June, July, and September 1964. The records corroborate Mrs. Hemby’s testimony that she stopped making payments at that time. There follows a $3.00 court cost in December 1964, and further payments of $5.00 each in February, March, May, and July 1965. On the day before the agency hearing, the total indebtedness owing Union Clothiers, Inc. was $36.00.
18. Mildred Hemby also presented written testimony to the agency, and gave oral testimony to the Civil Service Commission, to the effect that process was served on her personally at the Hemby’s home on the evening of January 6,1965; that Mr. Hemby was not at home at the time; that she had concealed the debt to Union Clothiers, Inc., and likewise concealed the court action, for fear of angering her husband; that she worked from 4:30 a.m. to 8 a.m. as a cleaning lady at the Criminal Division of the Court of General Sessions, and after work on January 15,1965, she went to the Small Claims Court to confess judgment; and that only when her husband questioned her on July 26, 1965, did she reveal to him her dealings with Union Clothiers, Inc.
19. At the Civil Service Commission hearing, Mildred Hemby testified that her paydays were on alternate Fridays, and her husband’s paydays were on the Fridays in between; she further testified that she made the $5 payments to Union (on February 12, March 26, May 8, and July 30, 1965) pursuant to the court order of January 15,1965.
20. At the agency hearing on August 25, 1965, plaintiff testified that he did not work at the Navy Finance Center on January 6, 1965, but testified that he was not at home that evening. He did not explicitly say that he was not served with a summons. He did explicitly deny that he had been to court with reference to a debt owed to Union. Plaintiff also testified that he had made no purchases from Union in the previous 2 years. At the Civil Service hearing on December 16, 1965, *160 plaintiff stated -that be “never received sucb a summons that night,” and that he had not been in court the day judgment was confessed. He testified further that he had not purchased anything from Union Clothiers, Inc., since 1962, and that a little after that his wife had told him that the bill to Union Clothiers, Inc., was paid up.
21.At the agency hearing plaintiff also testified that he drove a taxi part time in the evenings, and introduced his manifest for January 6,1965, indicating that he was operating a taxi that evening. The manifest in pertinent part reads as follows:
Name Joseph Hemby Date 1-6-65
Company Globe Cab No. 17 If. Badge No. 9179
Time Out 700 PM Mileage Out 96750 Time In Mileage In
Time Started No. of Pass. From To Time Amount Arrival
7:10.. 1 EOap&Benn. 14&UNW. 7:25 1.60
7:30.. 2 14 & Park Rd. 12&HNE. 7:45 .90
8:05.. 2 Union Station. 3636 16 NW. 8:20 1.50
8:35.. 1 14 & Oak NW. D.C. General Hosp.. 8:65 1.20
9:16.. 1 D.C. General. Dunbar Hotel_ 9:30 1.45
9:36.. 3 18 & Kalorama Rd... Hornead Apt. 9:40 1.20
9:55.. 1 810 Kennedy. 1925 Md Ave NE. 10:25 1.60
10:26.. 2 21 & Md Ave.— Rooky Rest.. 10:35 1.40
22. Plaintiff has presented his hacker’s manifest, and his and his wife’s testimony to contradict the official court records on which the agency’s and the Commission’s actions rest. Plaintiff argues that the inconsistency between such evidence can be explained in terms of simple ministerial error. Specifically plaintiff urges that the inconsistency between the marshal’s return and his own evidence can be explained by a mistake on the marshal’s part, namely, an inversion of the names “Joseph Hemby” and “Mildred Hemby.” Likewise, plaintiff urges that the court record showing that both he and his wife confessed judgment is explainable as a mistake attributable to the conditions which he alleges to exist at the Small Claims Court.
23. Plaintiff contends here, as he has contended throughout the administrative process, that his dismissal was arbitrary and capricious. He ’attacks the action of both the agency and *161 the Civil Service Commission. Plaintiff is a veteran and is entitled to the rights granted in Section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 390, 5 U.S.C. 863, which enables him to obtain a review by the Civil Service Commission of all the questions involved in his dismissal. The question here is whether the Civil Service Commission’s decision was arbitrary and capricious. Liotta v. United States, 174 Ct. Cl. 91, 96 (1966).
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover on his claim, and judgment is entered to that effect, with the determination of amount of recovery to be reserved for further proceedings under Rule 47 (c).

 The court acknowledges the assistance it has received from the report of Trial Commissioner Donald E. Lane.

 TMa decision was affirmed by the Civil Service Commission’s Board of Appeals and Review on June 17, 1966.

 It should be noted that the situation in this case Is not the same as the case where a party to a prior judgment Is attacking the effects of that judgment either directly or collaterally. See generally, 66 Yale L.J. 526, 533-34 (1957). Hence we are are not dealing with the doctrine of collateral estoppel. We are only concerned with facts contained in an official record of court.